UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNETTE RODGERS, *et al.*,

        Plaintiffs,

v.

MARILYN E. ATKINS,

        Defendant.

Case No. 10-cv-11799

Hon. Patrick J. Duggan

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this federal civil rights action instituted pursuant to 42 U.S.C. § 1983, pro se Plaintiffs Arnette Rodgers, Katrina Anderson, Wendell Finley, and Laura Hill are suing Defendant Marilyn E. Atkins, the former chief judge of the 36th District Court ("36th District") in Detroit, Michigan, seeking redress for the alleged deprivation of their vested property interests without due process in violation of the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs claim that Defendant Atkins violated their procedural due process rights in connection with disciplinary employment actions taken against them by the 36th District.[1] Plaintiffs maintain that under the collective bargaining agreement

---

[1] This action initially named two defendants: the 36th District Court and Defendant Atkins. However, on September 24, 2011, the Honorable Julian Abele

("CBA") in effect at the time of their terminations, "they could be discharged only for 'just cause' and that, as just-cause employees, they had the right to post-termination evidentiary hearings before a neutral decisionmaker, which they did not receive because the 36th District denied their demands for arbitration." *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 644 (6th Cir. 2013) (unpublished). Since the case has been pending in federal court, however, three of the four remaining Plaintiffs – Anderson, Finley, and Hill – have received post-termination hearings in the form of arbitration, as provided in the CBA.[2]

Presently before the Court is Defendant Atkins's motion for summary judgment, which seeks the entry of judgment on the merits of Plaintiffs' claims or, in the alternative, an order limiting Plaintiffs to recovering nominal damages. Each Plaintiff except for Finley responded to the motion. Having determined that oral argument would not significantly aid the decisional process, the Court

---

Cook, Jr. granted summary judgment in favor of the 36th District on Eleventh Amendment immunity grounds. Judge Cook similarly dismissed the claims against Defendant Atkins in her official capacity, but, upon Plaintiffs' reconsideration motion, reinstituted the claims for injunctive relief against Defendant Atkins in her official capacity. Thus, Defendant Atkins remains in this action in both her individual capacity (her request for qualified immunity was denied by Judge Cook, and subsequently affirmed by a panel of the United States Court of Appeals for the Sixth Circuit) and in her official capacity, but any claims for monetary relief from Defendant Atkins in her official capacity are barred by the Eleventh Amendment.

[2] Because the initial round of summary judgment motions were filed in 2010, neither Judge Cook's nor the Sixth Circuit's opinion, *see* note 1, *supra*, took note of the fact that arbitrations of pending grievances resumed in 2011.

dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).[3]  For the reasons set forth herein, the Court will grant in part and deny in part Defendant Atkins's motion.

## I.   BACKGROUND

### A.   The Collective Bargaining Agreement and the State Court Litigation

Plaintiffs Anderson, Finley, and Rodgers are former employees and Hill is a reinstated employee of the 36th District.   During their tenure with the court, Plaintiffs were members of a labor union, the American Federation of State, County, and Municipal Employees Council 25 and its affiliated Local 3308 ("AFSCME"), which, at least at the time of the actions complained of, represented the 36th District's clerical employees.

AFSCME, as the sole and exclusive bargaining representative of the 36th District's clerical employees, entered into a CBA with the 36th District.  This CBA contained several provisions relevant here, namely, (1) language in Article 12 providing that "[d]isciplinary action shall be imposed only for just cause" and (2) a five-step procedure set forth in Article 8 for the handling of grievance and arbitration procedures regarding employee claims.  The Sixth Circuit previously described the grievance and arbitration procedure:

---

[3] This determination was made after the Court conducted an on-the-record status conference on June 29, 2015.

> Article 8 described a five-step procedure by which employees could present grievances to the 36th District. Pursuant to Steps 1 through 3, employees could submit grievances, both orally and in writing, and meet with representatives from the 36th District to discuss their complaints. At Step 4, employees could submit their grievances to the Court Administrator or a designated representative, who would conduct a meeting of the relevant parties. In cases involving suspension or discharge, either party could request the other party to produce evidence, including witnesses, at the meeting or "as soon thereafter as practicable." If a grievance remained unresolved after Step 4, Step 5 permitted a party to demand arbitration.

*Rodgers*, 529 F. App'x at 644-45. The CBA governed the relationship between the 36th District and AFSCME members for the stated period of July 1, 2003 through June 30, 2006. Article 50 of the CBA provided that it would continue in effect for successive one-year periods unless terminated as provided therein.

On March 1, 2006, the 36th District's interim human resources director, James Meadows, wrote to AFSCME president Beverly Harris, notifying her

> "of the Court's intent to modify, amend, or terminate all or parts of the [CBA]." The 36th District and AFSCME later disputed whether Meadows's letter was sufficient to terminate the CBA or whether the CBA remained in effect after June 30, 2006. The parties submitted this issue to an arbitrator and litigated the issue in Michigan courts. On February 28, 2012, the Michigan Court of Appeals ruled that Meadows's letter did not terminate the CBA. *36th Dist. Court v. AFSCME Local 917*, 295 Mich. App. 502, 815 N.W.2d 494, 507 (Mich. Ct. App. 2012), *rev'd in part on other grounds, appeal denied in part*, 493 Mich. 879, 821 N.W.2d 786 (Mich. 2012).

*Rodgers*, 529 F. App'x at 645. As a result of the above-referenced state court litigation, "the parties . . . agree[] that the CBA . . . remained in full force from June 30, 2006 until June 30, 2009[,]" *Rodgers v. 36th Judicial District Court*, No.

4

10-11799, 2011 U.S. Dist. LEXIS 94715, at *2 (E.D. Mich. Aug. 24, 2011) (Cook, J.),  three years longer than the term provided in the agreement itself.

Before the issue of the continued vitality of CBA was resolved in the Michigan courts, but after the 36th District's letter to AFSCME purporting to terminate the CBA, the 36th District terminated Plaintiffs for engaging in a variety of dishonest conduct.  The 36th District terminated Finley in February 2007, and Anderson, Hill, and Rodgers in early 2009.  The factual circumstances surrounding each termination are addressed in Section I.C, *infra*.

Despite operating under the belief that it had effectively terminated the CBA, the 36th District continued to process some grievances in the manner provided by the CBA, including arbitration.  During an April 2008 arbitration involving the June 2007 denial of a promotion to AFSCME member (and non-party) Keith Carter, the 36th District contested the arbitrator's authority, arguing that the CBA had terminated in 2006.  The arbitrator dismissed the 36th District's objection as unfounded, explaining that the 36th District did not terminate the CBA in accordance with the relevant CBA provision.  Based on this finding, the arbitrator issued an award in June 2008 to the grievant, which prompted the 36th District to file a lawsuit seeking to vacate the award in the Wayne County Circuit Court.  AFSCME counterclaimed, seeking both the enforcement of the arbitration

award and an order directing arbitration of the grievances of four other 36th District employees (not the four involved in the present action).

On March 26, 2009, Wayne County Circuit Court Judge John Gillis ruled that the 36th District's March 1, 2006 notice had not terminated the CBA and that the grievances were therefore arbitrable. The 36th District appealed, and, on August 24, 2009, the Michigan Court of Appeals issued a ruling stating that the CBA had "expired."  In issuing this ruling, the Michigan appellate court reversed Judge Gillis.  However, one month later, the state appellate court reversed itself when it granted AFSCME's motion for reconsideration (on September 23, 2009) and vacated its August order.  (8/24/09 Order, Def.'s Mot. Ex. 1 Tab J; 9/23/09 Order, Def.'s Mot. Ex. 1 Tab K.)  The Michigan Court of Appeals ultimately affirmed Judge Gillis in an opinion issued on June 24, 2010, and the Michigan Supreme Court denied leave to appeal.

**B.     The Processing of Plaintiffs' Grievances**

Each of the remaining Plaintiffs' grievances was processed through Step 4 of Article 8 of the CBA.  AFSCME made demands for arbitration on behalf of Plaintiffs, which the 36th District refused to entertain.  The 36th District explained its refusal to submit to arbitration, indicating that

> "[i]t is the Court's position that the March 1, 2006 letter to Local 3308 constituted an effective notice to terminate the Labor Agreement" and that "the Court has no obligation to proceed to arbitration on a termination case, where the termination occurred after the June 30,

6

2006 termination of the Labor Agreement." The 36th District reiterated this position in its communications with arbitrators requesting that the plaintiffs' grievances not be scheduled for arbitration.

*Rodgers*, 529 F. App'x at 645. As a result of the position taken by the 36th District, no Plaintiff received a post-termination hearing before September of 2011.

## C.   The Circumstances Surrounding Plaintiffs' Terminations

### 1.   *Pertinent Facts Regarding the Discharge of Plaintiff Finley*

Finley, a human resources receptionist, was terminated for falsely applying for bereavement leave by representing that his mother had died, and insisting that was true even after questioning by his supervisor. The decedent was, in fact, his aunt, who had raised Finley since the age of ten. He was discharged on February 2, 2007, and third and fourth step meetings ended in the grievance over his termination being denied. (Def.'s Mot. Ex. 2, Saperstein Aff. ¶ 10 & Tab C.) On August 16, 2007, the parties selected an arbitrator to hear the grievance, however, the 36th District – believing that the CBA had terminated – "resisted arbitrating this grievance along with other grievances during this time." (Finley Arbitration Op. 1, Def.'s Mot. Ex. 16.) AFSCME did not press the matter, and it took until September 1, 2011 for Finley to receive an arbitration hearing.[4] Following this hearing, the arbitrator upheld Finley's discharge, rejecting AFSCME's contentions

---

[4] Finley's arbitration hearing occurred eight days after Judge Cook issued the first written opinion in this case.

that the grievance should be sustained based on the lengthy lapse between the fourth step of the grievance procedure and the arbitration. (*Id.*)

### 2.    *Pertinent Facts Regarding the Discharge of Plaintiff Hill*

Hill, a court reporter, was terminated on January 16, 2009 for claiming employer-paid life insurance benefits based on the death of her former husband, Michael Smith, who died three days after a divorce decree was issued by a state court. A grievance was filed on Hill's behalf on January 23, 2009, and the Step 4 denial was issued on October 7, 2009. On December 3, 2009, the 36th District declined AFSCME's demand for arbitration based on the 36th District's belief that the CBA had been terminated as of June 30, 2006. An arbitration hearing was eventually scheduled for April 10, 2012, and, in an opinion dated June 28, 2012, an arbitrator found that "there was just cause for disciplinary action against" Hill, but "that the penalty of discharge was excessive." (Hill Arbitration Op. 12, 13, Def.'s Mot. Ex. 17.) Despite reinstating Hill to her position as a court reporter, the arbitrator found "no basis under which [Hill] should receive a make-whole remedy, or any back pay whatsoever." (*Id.* at 13.) Thus, the arbitrator concluded that the period during which Hill was not working (a period of approximately three-and-a-half years) should be "treated as a suspension." (*Id.* at 14.)

### 3.    *Investigation into Ticket Fixing at the 36th District*

During the state court litigation involving the status of the CBA, the 36th District began an investigation into whether certain employees who served as courtroom clerks had engaged in improper handling of traffic tickets.[5]  Plaintiffs Rodgers and Anderson, along with four other clerks, were suspended on October 1, 2008.  On February 27, 2009, after extensions of their suspensions to allow for further investigation, Rodgers and Anderson were terminated.  (Def.'s Mot. Exs. 2, 3.)  Each received a termination letter cataloging the misconduct the 36th District concluded each had committed.

During the months that followed, 36th District personnel and AFSCME representatives met for third and fourth step grievance discussions concerning the terminated clerks.  The grievances were denied.  On November 24, 2009, interim human resources director James Meadows advised AFSCME representatives that the 36th District would not agree to select arbitrators for the termination grievances of Rodgers and Anderson, because those terminations occurred after June 30, 3006 – the date the 36th District believed the CBA terminated.

### 4.    *Pertinent Facts Regarding the Discharge of Plaintiff Anderson*

Anderson was initially terminated on February 27, 2009 for improperly handling a host of traffic cases, although, an amended termination letter was issued on July 28, 2009.  (Def.'s Mot. Ex. 3.)  The Step 4 processing of her grievance was

---

[5] The 36th District refers to "ticket fixing," nomenclature which this Court has adopted.  The ticket fixing involved the improper dismissal of traffic tickets.

completed on September 16, 2009.  The 36th District initially refused AFSCME's request to schedule arbitration because it believed the CBA was no longer in effect. After the scheduling of arbitrations resumed in 2011, Anderson's grievance was arbitrated on seven separate days between September 2011 and January 2012. (Anderson Arbitration Op. 3, Def.'s Mot. Ex. 15.)  Upon reviewing the evidence and the testimony given by various witnesses, the arbitrator upheld Anderson's termination, concluding that the 36th District possessed the requisite cause to terminate her employment.

### 5.    *Pertinent Facts Regarding the Discharge of Plaintiff Rodgers*

As mentioned, Rodgers was terminated for suspected ticket fixing.  Of the four Plaintiffs, Rodgers is the only one who never received an arbitration hearing. Defendant Atkins blames this on both her and her former counsel, saying that once the scheduling of arbitrations resumed in 2011, Rodgers and counsel were elusive, cancelled scheduled arbitrations, and were nonresponsive to requests to reschedule.

In addition to never receiving an arbitration hearing, Rodgers differs from the three other Plaintiffs in that Defendant Atkins presents two additional arguments as to why this Court should grant summary judgment on Rodgers's due process claim in Defendant's favor.  First, Defendant argues that Rodgers is precluded from proceeding with this action by virtue of the doctrine of judicial estoppel.  Essentially, Defendant contends that because Rodgers did not initially

10

disclose this action in her bankruptcy petition, she should be barred from pursuing it now.  The trustee of Rodgers's bankruptcy estate, however, ultimately became aware of the claim and abandoned it.  Second, Defendant argues that AFSCME settled Rodgers's claim as part of the City of Detroit's bankruptcy proceedings. There is a settlement agreement showing that the union obtained liquidation of Rodgers's claim.  (Settlement Agreement, Def.'s Reply to Rodgers Ex. A.)  At a June 29, 2015 status conference, the Court inquired about the meaning and effect of the agreement, which was eventually incorporated in the City's Plan of Adjustment.  To ensure that the Court was on solid footing with respect to the effect of the agreement, the Court requested the presence of an AFSCME attorney with knowledge of the bankruptcy proceedings.[6]

## D.    Procedural Background and the Law of the Case

Plaintiffs instituted the present civil action, which was originally assigned to the Honorable Julian Abele Cook, Jr., on May 3, 2010, and filed an amended pleading as a matter of right on May 25, 2010.  (ECF Nos. 1, 5.)  Although the case initially involved a cohort of seventeen plaintiffs, a court order, settlements, and voluntary dismissals have reduced this number to four, each of whom is now

---

[6]  The Court takes this opportunity to note that Plaintiff Rodgers's presence was similarly requested.  Rodgers was, however, absent from the June 29, 2015 status conference.  On July 7, 2015, the Court learned that Rodgers never received the letter requesting her presence, as she recently moved and did not update her address with the Court.

proceeding pro se.  Further, while the action initially named two defendants – the 36th District Court and Defendant Atkins – on September 24, 2011, the Honorable Julian Abele Cook, Jr. granted summary judgment in favor of the 36th District on Eleventh Amendment immunity grounds.[7]  Judge Cook similarly dismissed the claims against Defendant Atkins in her official capacity, but upon Plaintiffs' reconsideration motion, reinstituted the claims for injunctive relief against Defendant Atkins in her official capacity.

Judge Cook denied Defendants' motion for summary judgment to the extent it sought to dismiss Defendant Atkins from the lawsuit on the basis of qualified immunity, except with regard to then-Plaintiffs Yolanda Johnson, Yvonne Malvaux, and Dornita Cleveland, as to whom the motion was granted.[8]  Although Judge Cook did not believe Defendant Atkins was "entitled to a finding of qualified immunity," he denied Plaintiffs' cross motion, concluding that "the Plaintiffs have not established that the facts here are so one-sided in their favor that they are entitled to a judgment on their due process claims against her as a matter of law."  *Rodgers*, No. 10-11799, 2011 U.S. Dist. LEXIS 94715, at *33.  As a

---

[7] Pursuant to a directive from Judge Cook, the parties filed cross motions for summary judgment on September 15, 2010.  (ECF Nos. 10, 11.)

[8] Judge Cook held that Johnson and Malvaux, who were fired after the CBA terminated in June 2009, did not retain property interests in their employment sufficient to trigger the protections of the Fourteenth Amendment's Due Process Clause.  He further held that Malvaux and Cleveland waived their post-termination due process rights by failing to pursue arbitration.

consequence, Defendant Atkins remains in this action in both her individual capacity and official capacity, but any claims for monetary relief from Defendant Atkins in her official capacity are barred by the Eleventh Amendment.

Defendant Atkins filed an interlocutory appeal challenging the denial of qualified immunity.  In an opinion dated July 3, 2013,[9] the Sixth Circuit affirmed the denial, employing the three-step approach to evaluate Defendant Atkins's entitlement to qualified immunity established in *Feathers v. Aey*, 319 F.3d 842, 848 (6th Cir. 2003):[10]

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.  Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Rodgers*, 529 F. App'x at 646-47 (quoting *Feathers*, 319 F.3d at 848).

With respect to the first element, the Sixth Circuit determined that the facts, when construed in the light most favorable to Plaintiffs, sufficiently demonstrated a violation of Plaintiffs' procedural due process rights.  "In order to establish a

---

[9] The Sixth Circuit issued its mandate on July 25, 2013.

[10] While some panels of the Sixth Circuit apply the two-step approach articulated by the Supreme Court of the United States in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), "the three-step approach may in some cases increase the clarity of the proper analysis."  *Estate of Cater v. City of Detroit*, 408 F.3d 305, 310 n.2 (6th Cir. 2005).

procedural due process claim, the plaintiffs must show that (1) they had life, liberty, or property interests protected by the Due Process Clause; (2) they were deprived of these protected interests; and (3) the state did not afford them adequate procedural rights." *Id.* at 647 (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).[11]   The panel, agreeing with the federal district court, determined that Plaintiffs had a property interest in their continued employment by virtue of the CBA's just-cause termination provision. *Id.* at 647-48.   With respect to the adequacy of the procedural protections afforded to Plaintiffs by Defendant Atkins (presumably in her official capacity), the panel first pointed out that Plaintiffs' challenge pertained to the adequacy of the post-termination, not pre-termination, process: "[Plaintiffs] argue that they did not receive hearings before a neutral decisionmaker because Atkins denied their post-termination demands for arbitration.  This is enough to establish a constitutional violation under *Farhat* [*v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004)]." *Id.* at 649. In concluding its analysis of the first qualified immunity factor, the panel explained that "the facts, viewed in the light most favorable to the plaintiffs, show that all three elements of a procedural due process claim are met and that a constitutional violation occurred." *Id.* at 650.

---

[11] Because Plaintiffs were terminated, the Sixth Circuit only addressed the first and third factors. *Rodgers*, 529 F. App'x at 647.

With respect to the second qualified immunity factor requiring that the law be clearly established at the time of the violation, the Sixth Circuit explained:

> Supreme Court and Sixth Circuit precedent clearly establishes that public employees who may be fired only for "just cause" have property interests in their continued employment protected by due process. . . . *Farhat*, which was decided years prior to the plaintiffs' terminations, establishes that the opportunity for a post-termination evidentiary hearing before a neutral decisionmaker is required for due process. 370 F.3d at 596. Therefore, the violation here involved a clearly established constitutional right of which a reasonable person in Atkins's position would have known.

*Id.* (internal citations omitted).

Lastly, the panel held "that the plaintiffs allege sufficient facts to lead a jury to conclude that it was objectively unreasonable for an official in Atkins's position to believe that the CBA terminated and, therefore, that it was objectively unreasonable to fire the plaintiffs and deny their demands for arbitration." *Id.* at 653. "Because the plaintiffs have presented evidence sufficient to create a genuine issue of material fact on this point, it would be inappropriate to grant summary judgment to Atkins on the basis of qualified immunity." *Id.*

During the time between the Sixth Circuit's resolution of Defendant Atkins's interlocutory appeal and her most recent summary judgment motion – a period exceeding sixteen months – several Plaintiffs were dismissed pursuant to stipulated orders of dismissal, leaving the four plaintiffs who remain in the action

today.  Also during this time, the case was reassigned from Judge Cook to the undersigned.

Defendant Atkins filed the pending summary judgment motion on October 14, 2014.  It bears repeating that Plaintiffs are all proceeding pro se, as counsel was permitted to withdraw from the action.  The summary judgment motion has been fully briefed (with the exception of Plaintiff Finley, who declined to file a response), including sur-replies filed by Anderson and Rodgers.

## II.    GOVERNING LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2012).  A court assessing the appropriateness of summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986)).

The initial burden of proving the absence of a genuine dispute rests with the movant, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), who "must support the assertion by: (A) citing to particular parts of materials in the

record…; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(A)-(B). While this inquiry requires the Court to construe factual disputes, and the inferences there from, in the light most favorable to the non-moving party, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

If the moving party discharges their initial burden using the materials specified in Federal Rule of Civil Procedure 56(c), the burden of defeating summary judgment shifts to the non-movant who must point to specific material facts – beyond the pleadings or mere allegation – which give rise to a genuine issue of law for trial. *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514; Fed. R. Civ. P. 56(c)(1) (directing parties to specifically designate the materials in the record – such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" – to support their position regarding the presence or absence of a genuine dispute of material fact). A mere scintilla of evidence supporting the non-movant's claim will not prevent summary judgment; rather, there must be evidence on which a jury

could reasonably find for the non-movant.  *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

With respect to Plaintiff Finley, who has allowed Defendant Atkins's motion to stand unopposed, the Court notes that Sixth Circuit precedent indicates that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.  The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that [they have satisfied their initial burden of production]."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992) ("[T]he court must review carefully those portions of the submitted evidence designated by the moving party.").  *But see Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.") (citation and internal quotation marks omitted).

## III.   ANALYSIS

In the present motion, Defendant Atkins seeks summary judgment on several grounds: (1) Plaintiffs were not deprived of their right to a post-termination hearing (arbitration), and, even if they were, any delay in their receipt of arbitration was the fault of their union, not a state actor; (2) Rodgers is precluded from asserting her claim by the doctrine of judicial estoppel and/or because AFSCME

18

settled her claims during the City of Detroit bankruptcy proceedings; and, (3) if the Court declines to grant summary judgment on the merits, then it should limit Plaintiffs' recovery to nominal damages.

### A.     Were Plaintiffs Deprived of Their Constitutional Right to a Post-Termination Hearing, and, if so, were the Deprivations Attributable to a State Actor?

"In order to establish a procedural due process claim, the plaintiffs must show that (1) they had life, liberty, or property interests protected by the Due Process Clause; (2) they were deprived of these protected interests; and (3) the state did not afford them adequate procedural rights." *Rodgers*, 529 F. App'x at 647 (quotation omitted); *see also Women's Med. Prof'l Corp.*, 438 F.3d at 611. Here, only the third element is at issue.[12]

As articulated by the Sixth Circuit, the crux of Plaintiffs' procedural due process claim is "that under the CBA in effect at the time of their terminations, they could be discharged only for 'just cause' and that, as just-cause employees, they had the right to post-termination evidentiary hearings before a neutral decisionmaker, which they did not receive because the 36th District denied their demands for arbitration." *Rodgers*, 529 F. App'x at 644.  Since the issuance of the

_____

[12] There can be no question that Plaintiffs had a protected property interest in their employment by virtue of the CBA's just-cause termination provision, and the Sixth Circuit pronounced as much in its 2013 opinion. "Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of the same litigation." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

Sixth Circuit's opinion, however, three of the four Plaintiffs (all but Rodgers) have proceeded through Step 5 of the grievance procedure set forth in the CBA. All three received an arbitration hearing before a neutral arbitrator at which they were represented by counsel and permitted to present evidence and to challenge the evidence of the 36th District. Defendant Atkins contends that because these three Plaintiffs eventually received a post-termination hearing that accorded to the strictures of the Fourteenth Amendment's Due Process Clause, the question, at least as it pertains to these Plaintiffs, is whether the delayed receipt of process constitutes a due process violation. In this Court's opinion, an opinion formed with reference to controlling Supreme Court precedent and the unique factual scenario presented herein, the answer to this inquiry is a resounding yes.

The Court's analysis on the issue of delay begins and ends with the Supreme Court case of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487 (1985). In *Loudermill*, the Supreme Court addressed the question of whether a procedural due process violation occurred when a security guard who could only be terminated for cause had to wait nine months before obtaining a post-termination hearing. *Id.* at 546-47 & n.11, 105 S. Ct. at 1495-96 & n.11. In rejecting the security guard's argument that the nine-month delay violated the Due Process Clause, the Court explained:

> The Due Process Clause requires provision of a hearing "at a meaningful time." At some point, a delay in the post-termination

20

> hearing would become a constitutional violation.  In the present case,
> however, the complaint merely recites the course of proceedings and
> concludes that the denial of a "speedy resolution" violated due
> process.  This reveals nothing about the delay except that it stemmed
> in part from the thoroughness of the procedures.  A 9-month
> adjudication is not, of course, unconstitutionally lengthy *per se*.  Yet
> Loudermill offers no indication that his wait was unreasonably
> prolonged other than the fact that it took nine months.  The
> chronology of the proceedings set out in the complaint, coupled with
> the assertion that nine months is too long to wait, does not state a
> claim of a constitutional deprivation.

*Id.* at 547, 105 S. Ct. at 1496 (internal citations omitted).

In the case at bar, the delay in Plaintiffs' receipt of post-termination process did not stem from the thoroughness of the procedures employed by the 36th District.  Rather, the delay is directly traceable to the 36th District's refusal to submit Plaintiffs' grievances to arbitration, despite the CBA's express provision of such a right.  This refusal, animated as it was by an erroneous belief that the CBA had been effectively terminated, caused a delay in Plaintiffs' receipt of an arbitral forum (i.e., the post-termination hearing to which they were entitled).

*Loudermill* makes clear that a delay in the receipt of an adequate post-termination hearing does not necessarily mean that the delay was unreasonable and therefore violative of the Due Process Clause.  However, *Loudermill* instructs that "[t]he Due Process Clause requires provision of a hearing 'at a meaningful time.'" *Id.*  Plaintiff Finley, who was terminated in February of 2007, waited until September 1, 2011 for an arbitration hearing, a period of roughly four-and-a-half

21

years.[13]  Plaintiffs Anderson and Hill, both of whom were terminated in early 2009, did not have to wait as long to receive their post-termination hearings, but the 36th District's refusal to arbitrate resulted in a delay of several years for each of them. Lastly, Rodgers, whose grievance was never arbitrated, also suffered an unreasonable delay, because even if her arbitration had occurred as initially scheduled (or around the time of any other Plaintiff's hearing), she, like the others, would have already waited a period of several years.  Hard pressed to locate any facts in the record suggesting that this multi-year period was reasonable, the Court concludes that it was anything but.   Bolstering this conclusion is the uncontroverted fact that at the time the 36th District declined to submit to arbitration, a Wayne County Circuit Court judge (Judge Gillis) had issued a ruling in which he determined that the 36th District did not properly terminate the CBA and that the CBA was, therefore, still in effect.[14]

---

[13] To illustrate the unreasonableness of this lengthy period, one need only consider the following.  An arbitrator was initially selected to hear Finley's grievance on August 16, 2007.  Paragraph C of Article 8 of the CBA provided that a discharge grievance shall be heard within sixty (60) days of the selection of an arbitrator.  Finley's grievance was not heard within sixty days, but rather, he was required to wait in excess of 1,500 days to receive his arbitration hearing.

[14] Although the Michigan Court of Appeals briefly reversed this ruling in a peremptory order, it quickly reversed course and reinstated Judge Gillis's order, which was not stayed pending the resolution of the appeal.  While the order – which required the 36th District to arbitrate the grievances of four non-parties – was not binding on the 36th District with regard to Plaintiffs, it is unclear what motivated the 36th District's continued insistence that the CBA had been

Because the Court believes that Plaintiffs' "wait was unreasonably prolonged" by the 36th District's refusal to submit to arbitration, the Court rejects Defendant Atkins's position that Plaintiffs were not deprived of their right to a constitutionally-adequate post-termination hearing. Indeed, there being no disputed issues of material fact, the Court concludes that Plaintiffs were, as a matter of law, deprived of their right to a post-termination hearing within a meaningful time.[15]

According to Defendant Atkins, the above finding does not end the matter; rather, she contends that even if the Court determines that Plaintiffs were denied sufficient process, that does not necessarily mean that the denial is imputable to her as a state actor. In an effort to sever the requisite causal connection between the constitutional rights deprivation and state action,[16] Defendant Atkins argues that

terminated. Indeed, Defendant Atkins appears to sweep the court order declaring the CBA in effect under the rug, as if it never occurred.

[15] The Court recognizes that Plaintiffs, each of whom is unrepresented, have not moved for summary judgment. However, there are no genuine disputes of material fact on the issue of whether the delay was reasonable or unreasonable, and it is this Court's opinion that the delayed receipt of a constitutionally-adequate post-deprivation hearing violated Plaintiffs' due process rights as a matter of law.

[16] It is axiomatic that § 1983 has a causation requirement; that is, to prevail on such a claim, a plaintiff must show that the state-actor defendant deprived her of a right secured by the federal constitution or by federal law. *Markva v. Haveman*, 317 F.3d 547, 552 (6th Cir. 2003). As Chief Justice Burger stated in *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770 (1982), "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same

23

AFSCME's failure to press for arbitration on behalf of Plaintiffs – when it did so for other grieved employees by bringing a counterclaim in the state court action before Judge Gillis – means that any due process deprivation is the fault the union, *not* Defendant Atkins.  Following this line of argumentation, it was the actions (or lack thereof) of AFSCME, not Defendant Atkins (i.e., the state actor), that caused the constitutional injury.

As support for her position, Defendant Atkins points to case law from the Sixth Circuit, as well as other federal courts of appeals, standing for the proposition that a labor union's decision not to pursue arbitration on behalf of a member negates the requisite causal connection between state action and a procedural due process violation.  The problem with these cases is that they are factually inapposite, and, therefore, entirely unhelpful to Defendant Atkins.  In each of these cases, grievance and arbitration procedures set forth in collective bargaining agreements provided the relevant framework for employees seeking to challenge adverse employment actions.[17]   In each of these cases, the union representing the aggrieved employee invoked the grievance procedure set forth in the pertinent collective bargaining agreement and the employer fully participated

question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the state?'"

[17] There is ample case law supporting the notion "that grievance procedures outlined in collective bargaining agreements can satisfy due process requirements." *Dykes*, 68 F.3d at 1572 n.6 (collecting cases).

in the process.  After ushering the grievances through the first several stages of the grievance process, the union declined to pursue arbitration on behalf of its member.  Simply stated, the employees in the cases relied upon by Defendant did not receive an arbitration hearing because the union elected not to pursue one.[18] *See, e.g.*, *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 897 (6th Cir. 2004) (unpublished) (explaining, in a case where the union representative declined to seek arbitration on behalf of a member, "that the Union elected not to pursue arbitration on [the plaintiff]'s behalf does not amount to a deprivation of her right to due process by [the state-actor defendant]") (citations omitted); *Dykes*, 68 F.3d at 1571 (rejecting public employee's due process claim where union declined to pursue arbitration after having exhausted the three-step grievance procedure).

The above-described factual scenario is simply not what transpired in the instant case.  It is undisputed that AFSCME representatives made demands for arbitration and that the 36th District resisted those demands.  Although the 36th District adhered to the grievance procedure through the first four steps, once AFSCME tried to proceed to the fifth and final step, the 36th District unilaterally

---

[18] "[E]ven when a collective bargaining agreement provides for final and binding arbitration, the union can still elect not to proceed to the final step of the grievance process if the decision to do so is consistent with its duty of fair representation."  *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1346 n.6 (6th Cir. 1992).

determined that it need not comply with the CBA framework.  While language from the Sixth Circuit provides that "'[t]he law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process[,]'" *Greer v. Detroit Public Schools*, 507 F. App'x 567, 572 (6th Cir. 2012) (unpublished) (emphasis in original) (quoting *Farhat*, 370 F.3d at 596), this opportunity refers to one that has not been foreclosed by the employer, *Dykes*, 68 F.3d at 1565 (holding that "where an adequate grievance/arbitration procedure is in place *and is followed*, a plaintiff has received the due process to which he is entitled under the Fourteenth Amendment") (emphasis supplied), which is precisely what occurred here.  Defendant Atkins has not pointed to a single case holding that grieved employees may not pursue a procedural due process claim against a state actor where a public employer failed to abide by the grievance and arbitration process contained in a collective bargaining agreement.

Unlike the cases relied upon by Defendant Atkins, cases where a union deemed a member's grievance lacking in merit and therefore elected not to pursue arbitration, here, it was the employer that denied the arbitration demand.  It was therefore the 36th District – operating under the erroneous belief that the CBA bestowing the right to arbitration had been properly terminated and was no longer in effect – that hindered Plaintiffs' ability to obtain an adequate post-termination hearing, *not* AFSCME.  The argument advanced by Defendant Atkins that the

26

union was somehow responsible for the rights deprivation completely ignores the indisputable fact that the 36th District's conduct was the precipitating cause of the due process violation.  This state-created hindrance is more problematic when one recalls that a court of competent jurisdiction had deemed the CBA alive and well prior to the 36th District's refusal to proceed to arbitration.  The 36th District has failed to provide any explanation for why it disregarded this ruling, instead, blaming AFSCME for any rights deprivation that occurred.  The implicit suggestion that the 36th District was not obligated to treat the CBA as operative in these circumstances defies logic and borders on the absurd given the role of the state district court in the sound administration of justice.  This Court will not countenance the 36th District's disregard of Judge Gillis's order.

Despite the seemingly glaring deficiencies in her argument, Defendant Atkins endeavors to shoehorn the facts of this case into the cases favorable to her argument by suggesting that AFSCME dropped the proverbial ball.  She points to two avenues AFSCME could have pursued to press for arbitration despite the 36th District's refusal to participate.  First, AFSCME could have filed an enforcement action in the Wayne County Circuit Court seeking an order requiring the 36th District to arbitrate the grievances, as it did in the counterclaim filed before Judge

Gillis.[19]  AFSCME's failure to do so, Defendant argues, means that Plaintiffs' only recourse for the constitutional-rights deprivation is to file a breach of the duty of fair representation action against AFSCME.[20]  Defendant cites *Rhoads* as support for this proposition, but *Rhoads* is unavailing.  In *Rhoads*, the Sixth Circuit declined to find a due process violation where the union did not pursue arbitration on behalf of the grieved employee.  The panel noted that, at worst, the union's decision constituted a breach of the duty of fair representation and that the plaintiff's only "recourse for the Union's refusal to pursue her arbitration of her grievance was against the Union."  103 F. App'x at 898.  As detailed above, however, this case (and the others cited by Defendant Atkins) is inapposite.  While it is true that AFSCME did not file an enforcement action on behalf of Plaintiffs, Defendant cites no case law, nor has the Court located any, standing for the proposition that the duty of fair representation requires a union to file an enforcement action where an employer breaches its contractual obligations.

---

[19]  Although Defendant Atkins stresses that no stay was in effect in effort to bolster her position that AFSCME could have filed an enforcement action in the Wayne County Circuit Court, the Court does not believe that the lack of a stay is favorable to her position.

[20]  In the grievance context, the breach of the duty of fair representation occurs where a union: (1) conducts itself in an arbitrary or discriminatory manner, or in bad faith; (2) processes the grievance in a careless manner; or (3) inadequately handles the grievance due to its ignorance of the contract provision. *LaPerriere v. Int'l Union, UAW*, 348 F.3d 127, 132 (6th Cir. 2003).

The second hypothetical avenue AFSCME could have pursued, according to Atkins, was to proceed with arbitration, as the selection of an arbitrator was a matter already determined by contract.  The CBA, which incorporated the rules of the American Arbitration Association ("AAA"), provided that arbitrators were "selected" in a system providing that the "next-up" arbitrator would be automatically assigned.  Because the selection of an arbitrator was a mere formality, the theory goes, the union could have proceeded to arbitration without the 36th District's participation.  The Court does not find this persuasive, as the cited AAA rule contains discretionary language regarding the appointment of an arbitrator, and any suggestion that the AAA would have had greater success in bringing the 36th District to the table is speculative.  (Def.'s Br. 21.)

Having rejected Defendant Atkins's arguments, the Court holds that Plaintiffs' procedural due process rights were violated and that this violation was attributable to state action.

**B.    Should Plaintiff Rodgers (1) be Judicially Estopped from Asserting her Civil Rights Claim Where She Failed to Disclose the Cause of Action in a Bankruptcy Petition or (2) be Permitted to Continue in this Action Where AFSCME Settled Her Claim Against the 36th District as a part of the Municipal Bankruptcy Proceedings?**

Defendant Atkins contends that even if Plaintiff Rodgers suffered a due process deprivation, she should be judicially estopped from proceeding with her

29

due process claim because she initially failed to disclose the cause of action during her bankruptcy proceedings.

The doctrine of judicial estoppel is a discretionary equitable doctrine "utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (internal quotation marks and quotation omitted). The Supreme Court has indicated that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle[.]" *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815 (2001) (quotation omitted). It has, however, identified three considerations that courts should weigh when determining whether to apply judicial estoppel: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51, 121 S. Ct. at 1815. In the bankruptcy context, case law from the Sixth Circuit substitutes the third line of inquiry with a requirement that "the

debtor's omission did not result from mistake or inadvertence." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 698 (6th Cir. 2014).

Sixth Circuit precedent instructs that the doctrine "be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quotation omitted); *see also White*, 617 F.3d at 486-87 (Clay, J. dissenting) (noting that the doctrine of judicial estoppel often yields harsh results). Despite this cautionary note, the Sixth Circuit has applied principles of judicial estoppel to bar a debtor's prosecution of a claim that was not disclosed to the bankruptcy court. *See, e.g.*, *Javery*, 741 F.3d at 697-98 (noting that the Sixth Circuit has "applied the doctrine [of judicial estoppel] to bar employment related claims not disclosed in prior bankruptcy proceedings").

Having reviewed the arguments asserted by the parties, as well as the documentation submitted in support thereof, the Court concludes that it will not apply the doctrine of judicial estoppel to bar Rodgers's claim. This is so because the bankruptcy trustee learned of the cause of action and subsequently abandoned the claim, explaining:

> Following the Trustee's investigation into the claim and consultation with a labor and employment law attorney, the Trustee abandoned the

estate's interest in the Due Process Claim as burdensome and of inconsequential value to the estate.

(Notice of Trustee's Intent to Abandon Grievance Claim, Def.'s Mot. Ex. 10); *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012) ("[A]bsent abandonment, only the Trustee may bring the age-discrimination claim[.]") (quotation and additional citations omitted).   Accordingly, the Court denies Defendant Atkins's motion to the extent it asks this Court to judicially estop Plaintiff Rodgers from pursuing this cause of action.

Defendant Atkins also seeks to foreclose Rodgers's ability to pursue her due process claim on the basis that AFSCME settled her grievance (amongst others) after negotiating with the City of Detroit (the 36th District's funding unit) as part of the City's bankruptcy proceedings.   As evidenced by a settlement agreement incorporated into the City's Plan of Adjustment, AFSCME settled Rodgers's grievance and the claim is being liquidated at a value of $125,000, which will be discharged by five equal annual payments totaling one-third of that amount. (Def.'s Br. 15.)

Defendant's argument is easily disposed of, as the explicit terms of the settlement agreement make it clear that Rodgers's due process claim was not directly impacted by the settlement.   (Settlement Ag. ¶ 7 ("Nothing in this Agreement shall affect any claims or defenses asserted by any party in the Rodgers proceeding.").)   At the status conference, an attorney representing AFSCME

32

indicated that he helped draft the terms of the settlement agreement and that he was careful to draft the language in such a manner so as not to impair any AFSCME member's rights in a collateral proceeding, such as the proceeding presently before the Court.  This attorney did, however, explain that the settlement resolved the grievance (as distinct from the due process claim) and that the settlement, therefore, extinguished Rodgers's ability to proceed with an arbitration hearing.  In fact, counsel explained that the union is barred from taking any grievances filed before the City's bankruptcy petition to arbitration.

The import of the settlement agreement, then, is that Rodgers may not seek any relief from the 36th District, which she was already prohibited from doing by the Eleventh Amendment.  Further, she may not seek any relief against Atkins in her official capacity.  However, because Atkins is named as a defendant in both her individual and official capacities, Rodgers's due process claim may proceed against Atkins in her individual capacity.  Nothing in the settlement agreement precludes such a possibility.[21]  Accordingly, the Court denies Defendant Atkins's motion to the extent it seeks dismissal of Rodgers's due process claim.

---

[21] The Court wishes to point out that the journey Rodgers's claim has taken through the courts has been a unique one.  Despite the analytical appeal of distinguishing the grievance (or the "contract claim") from the due process claim, the two "claims" are not so neatly severable.  This is because Rodgers never received an arbitration hearing and no just cause determination was made by an arbitrator, as required by the CBA.  However, the settlement agreement extinguished Rodgers's right to an arbitral forum, because it resolved the grievance

**C.      Should Plaintiffs be Limited to Recovering Nominal Damages?**

Having determined that each Plaintiff's procedural due process rights were violated, the Court must assess the issue of damages.  Defendant Atkins argues that "it is apparent that the three Plaintiffs who received full post-termination hearings can claim at most nominal damages on account of a limited constitutional deprivation – delay in holding those arbitrations."   (Def.'s Br. 19 (emphasis removed).)  This is "apparent" because no Plaintiff has shown a causal connection between the due process violation (the delayed receipt of a post-termination hearing) and their claimed damages (emotional distress and reputational injury).  Because Plaintiffs have failed to establish causation, Defendant argues, the Court should apply the rule articulated in *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1042 (1978) limiting Plaintiffs to nominal damages.

"Doubtless 'the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights.'"   *Farrar v. Hobby*, 506 U.S. 103, 112, 113 S. Ct. 556, 573 (1992) (quotation omitted).  "Although mental and emotional distress caused by the denial

----

against the 36th District.  Further, because Atkins was not a party to the CBA in her individual capacity, the Court cannot order Atkins to participate in arbitration or to provide any other contractual remedy set forth in the CBA.   Thus, in Rodgers's case, the settlement agreement (which, it bears repeating, resolved all pending grievances against the 36th District) precludes the possibility of an arbitrator making a finding on the issue of whether there was just cause to terminate Rodgers.  In this way, the settlement agreement operates similarly to a good cause finding.

of procedural due process may be compensable under section 1983, damages should not be presumed to flow from every deprivation of due process." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1352 (6th Cir. 1992) (citing *Carey*, 435 U.S. at 262-63, 98 S. Ct. at 1051-52). Thus, while a deprivation of procedural due process may sometimes justify an award of compensatory damages, careful analysis is required in cases where it is eventually determined that the deprivation of a plaintiff's property of liberty was justified. *Id.* As the Supreme Court explained in *Carey*,

> where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But . . . the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983.[22] This ambiguity in causation [] provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself.

435 U.S. at 263-64, 98 S. Ct. at 1052. If unable to make the requisite showing – that is, that the emotional (or otherwise compensable) injury resulted from the due process violation as opposed to the justified deprivation – a plaintiff should only

---

[22] In footnote 19 of the opinion, the *Carey* Court noted that:

In this case, for example, respondents denied the allegations against them. They may well have been distressed that their denials were not believed. They might have been equally distressed if they had been disbelieved only after a full-dress hearing, but in that instance they would have no cause of action against petitioners.

435 U.S. at 263 n.19, 98 S. Ct. at 1052 n.19.

recover nominal damages. *Id.* at 266, 98 S. Ct. at 1054 ("[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury."). Nominal damages are proper in such a situation because even if the adverse employment actions were justified, and even if Plaintiffs cannot discharge their burden of demonstrating actual damages, "the fact remains that they were deprived of their right to procedural due process." *Id.* at 266, 98 S. Ct. at 1053. Although not of great monetary value, nominal damages serve as a formal recognition that a plaintiff has been wronged.

Under these principles, a plaintiff who did not receive a timely-post termination hearing, but whose termination is later upheld in an otherwise constitutionally-adequate hearing, is limited to recovering damages for the procedural deprivation, not lost wages or other compensatory damages such as emotional distress or reputational harm. This rule of law applies to Plaintiffs Anderson, Finley, and Hill, each of whom eventually obtained a constitutionally-adequate post-deprivation hearing. It also applies to Rodgers, although the analysis is rendered convoluted by the fact that Rodgers never received a post-termination hearing.

Arbitrators determined that the terminations of both Anderson and Finley were supported by just cause, meaning that the terminations were justified. As such, to defeat summary judgment on their entitlement to compensatory damages,

these two Plaintiffs must demonstrate that they "actually suffered distress because of the denial of procedural due process itself."  *Id.* at 263-64, 98 S. Ct. at 1052. Neither Anderson nor Finley can discharge this burden.

In her response brief, Plaintiff Anderson explains that the untimely receipt of a post-termination hearing "left me and my family emotionally drained, and put in a very stressful situation."  (Anderson Resp. 6.)  The brief further states:

> Chief Judge Marilyn Atkins['s] choice to disregard all court orders given to her, as a judge who is there to uphold the law as it is written, and her [choice not to provide me with] a fair and honest hearing in a . . . reasonable time frame has left me speechless.  The waiting and waiting for a timely hearing[] just left me emotionally drained.

(*Id.*)  These unsupported assertions do not satisfy the requirement in Federal Rule of Civil Procedure 56(c)(1)(A) that a party seeking to demonstrate "that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of the materials in the record, including depositions[.]"  Further, as Defendant Atkins argues, Anderson's deposition testimony is devoid of any indication that the emotional distress and reputational harm Anderson claims to have experienced were the result of the delayed receipt of an arbitration hearing as opposed to the justified termination.  For instance, she testified that the following would support her claims for mental and emotional distress and humiliation and embarrassment:

> Loss of past earnings, loss of future earnings, the embarrassment, the humiliation.  My home being unstable.  Repossession of a car. Almost losing my home.  Me – loss of income, coming from a [] two-

> income home to a one-income home.  Putting pressure on the husband
> . . . .  Cut back on a lot of things.  Down to one car.
>
> Just pressure in the home. . . .  Pinching – you know, pinching
> earnings just being emotionally drained when you come from a two-
> income to a one-income.
>
> Me crying every day, you know, wishing, you know, trying to turn
> back the hands of time.  But I can't. . . .

(Anderson Dep. 135-36, Def.'s Mot. Ex. 22.)  However, this testimony does not support the contention that the injuries were caused by the delay in obtaining a hearing and Anderson has not pointed to any record evidence to support her assertion that she suffered damages as the result of the procedural irregularity itself.  Rather, the damages referred to in her deposition testimony would have been incurred irrespective of the timing of the arbitration hearing, as an arbitrator determined that the termination was supported by good cause.  Therefore, Anderson may not recover compensatory damages.

The same is true of Plaintiff Finley, who, during his deposition, claimed that the delayed receipt of an arbitral forum caused him "stress, . . . a lot of stress." (Finley Dep. 80, Def.'s Mot. Ex. 21.)  When asked how the stress impacted him, Finley responded: "Headaches, back pain, . . . I mean it's just a struggle, but as I said, I'm a positive man and I don't give up. . . ."  (*Id.*)  As with Anderson's testimony, this testimony does not support a conclusion that the emotional distress

38

resulted from the procedural due process violation as opposed to the loss of employment.  As such, Finley may not recover compensatory damages.

Turning to Plaintiff Hill, the Court concludes that the same result applies. Although Hill was reinstated to her position by an arbitrator after a three-and-a-half year period, the arbitrator expressly declined to award Hill back pay, deeming this lengthy period a disciplinary suspension.  While Hill argues that it is likely that the arbitrator would have reinstated her earlier had she received an earlier hearing, the Court would have to engage in pure speculation to find as much, as there is nothing in the record to support this contention.  Because Hill cannot show that the delay, as opposed to the discipline, caused any of her claimed damages, she may not recover compensatory damages.

Lastly, the Court must address the damages issue vis-à-vis Plaintiff Rodgers, who never received a post-termination hearing resulting in a finding of good cause. Defendant Atkins argues that Rodgers is no longer entitled to arbitration by virtue of the settlement reached during the City of Detroit bankruptcy proceedings, and, for the reasons delineated in note 21, *surpa*, the Court agrees.  Although the AFSCME attorney indicated at the June 29 status conference that nothing in the settlement agreement resolved the just cause determination, the Court does not believe that the ends of justice would be served by holding Atkins personally liable for events outside of her control.  In other words, it makes little sense to hold

Atkins accountable for the lack of a just cause determination when the opportunity to make a just cause determination has been foreclosed by a settlement agreement precipitated by the City of Detroit's bankruptcy. Thus, the Court will also limit Rodgers's recovery to nominal damages.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Plaintiffs' procedural due process rights were violated by virtue of the unreasonable delay in their receipt of a constitutionally-sufficient post-termination hearing. For this reason, the Court denies Atkins's summary judgment motion on the issue of liability and enters judgment in favor of Plaintiffs. Despite prevailing on the merits of their due process claims, the Court concludes that Plaintiffs have failed to discharge their burden of demonstrating an entitlement to compensatory damages. As such, the Court grants Atkins's summary judgment motion on the damages issue, and awards each Plaintiff one hundred dollars ($100.00) in nominal damages, to be paid by Defendant Atkins in her individual capacity.

**IT IS SO ORDERED**.

Dated: July 17, 2015

                             s/PATRICK J. DUGGAN
                             UNITED STATES DISTRICT JUDGE

Copies to:

**Arnette Rodgers**
5916 John R. Street
Detroit, MI 48202

**Arnette Rodgers**
2062 Hyde Park Dr.
Detroit, MI 48207

**Katrina Tate-Anderson**
4 Shawcross Place
Highland Park, MI 48203

**Laura Hill**
P.O. Box 20471
Ferndale, MI 48220

**Wendell Finley**
8125 Bliss
Detroit, MI 48224

**Elizabeth P. Hardy, Esq.**
**Noel D. Massie, Esq.**
**Thomas G. Kienbaum, Esq.**